# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

TIFFANY ENGLERTH,          )
                                   )
        Plaintiff,         )
                                   )
v.                              )          **Case No. 1:15CV82NCC**
                                   )
CAROLYN W. COLVIN,       )
Acting Commissioner of Social Security,   )
                                   )
        Defendant.      )

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Tiffany Englerth (Plaintiff) for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff filed a Brief in Support of the Complaint. (Doc. 12). Defendant filed a Brief in Support of the Answer. (Doc. 13). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 7).

## I.
## PROCEDURAL HISTORY

Plaintiff filed her application for SSI on October 15, 2009, alleging a disability onset date of May 1, 2007. (Tr. 16, 233). Plaintiff's application was denied and she filed a request for a hearing before an Administrative Law Judge (ALJ). (Tr. 95-102). An administrative hearing was held before an ALJ on November 8, 2011. Plaintiff did not appear at the hearing, and the ALJ dismissed her case on January 5, 2012. (Tr. 67-71, 80-84). Plaintiff appealed the ALJ's dismissal to the Appeals Council, which remanded the case to the ALJ. (Tr. 85-89, 159-60).

A second hearing was held before an ALJ on August 12, 2013.  (Tr. 36-66).  By decision

dated December 13, 2013, the ALJ found Plaintiff was not disabled.  (Tr. 16-30).  On March 11,

2015, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-7).  As such, the ALJ's

December 13, 2013 decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for

determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is

determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting

Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the

claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20

C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as

"any impairment or combination of impairments which significantly limits [claimant's] physical

or mental ability to do basic work activities."  Id.  "The sequential evaluation process may be

terminated at step two only when the claimant's impairment or combination of impairments

would have no more than a minimal impact on [his or] her ability to work."  Page v. Astrue, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir.

2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or

equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d);

pt. 404, subpt. P, app. 1.  If the claimant has one of, or the medical equivalent of, these

impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC).  See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC.").  Even if a court finds that there is a

preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).  See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).  In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987).  See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial

evidence may also support an opposite conclusion or because the reviewing court would have

decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589;

Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661

(8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial

evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v.

Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements."

Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or has lasted or can be expected to last for a continuous period

of not less than 12 months."  42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).  "While the

claimant has the burden of proving that the disability results from a medically determinable

physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

> (1) the claimant's daily activities;
>
> (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;
>
> (3) any precipitating or aggravating factors;
>
> (4) the dosage, effectiveness, and side effects of any medication; and
>
> (5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly

discuss each <u>Polaski</u> factor." <u>Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004).  <u>See</u>

<u>also</u> <u>Steed</u>, 524 F.3d at 876 (citing <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000)).  The ALJ

need only acknowledge and consider those factors.  <u>See</u> <u>id.</u>  Although credibility determinations

are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on

substantial evidence.  <u>See</u> <u>Rautio v. Bowen</u>, 862 F.2d 176, 179 (8th Cir. 1988); <u>Millbrook v.</u>

<u>Heckler</u>, 780 F.2d 1371, 1374 (8th Cir. 1985).

      RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. §

404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20

C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his

or her past relevant work can perform other work which exists in the national economy.  <u>See</u>

<u>Karlix v. Barnhart</u>, 457 F.3d 742, 746 (8th Cir. 2006); <u>Nevland</u>, 204 F.3d at 857.  The

Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.

<u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d at 857.  The Commissioner has to prove this by

substantial evidence.  <u>Warner v. Heckler</u>, 722 F.2d 428, 431 (8th Cir. 1983).  Second, once the

plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that

there are jobs available in the national economy that can realistically be performed by someone

with the plaintiff's qualifications and capabilities.  <u>See</u> <u>Goff</u>, 421 F.3d at 790; <u>Nevland</u>, 204 F.3d

at 857.

      To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be

used.  An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's

limitations, but only those which the ALJ finds credible.  <u>See</u> <u>Goff</u>, 421 F.3d at 794 ("[T]he ALJ

properly included only those limitations supported by the record as a whole in the

hypothetical."); <u>Rautio</u>, 862 F.2d at 180.  Use of the Medical-Vocational Guidelines is

appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff testified that she had constant back pain; that her 2007 knee surgery did not help her knee pain; that it had been recommended that she have a second surgery; that she could walk about ten minutes before her feet hurt; that she had numbness in her hands; that she could lift only five pounds; that she had migraine headaches two to four times a week; that her migraine headaches lasted from two to three days; that she had severe nightmares; and that she had suicidal thoughts when she was "too stressed out." (Tr. 44-51, 56, 60).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since October 14, 2009, her application date. The ALJ further found that Plaintiff had the following severe impairments: degenerative joint disease of the knees, obesity, chronic obstructive pulmonary disease (COPD), asthma, bipolar disorder, anxiety, and posttraumatic stress disorder (PTSD), and, as of June 2013, carpal tunnel syndrome. Additionally, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment, and that Plaintiff had the RFC for light work including the following: Plaintiff could

lift and carry up to 20 pounds occasionally and 10 pounds frequently; Plaintiff could stand and walk for 4 hours in an 8-hour workday; Plaintiff could sit for 6 hours in an 8-hour workday; Plaintiff could occasionally balance, kneel, crouch, crawl, stoop, and climb ramps or stairs; Plaintiff had to be able to alternative between sitting and standing for 1 to 2 minutes each hour, but did not need to leave the work station to do so; Plaintiff could frequently handle and finger; Plaintiff could not have concentrated exposure to pulmonary irritants; Plaintiff could perform simple, routine tasks that could be performed independently and in a non-public setting; Plaintiff could perform work involving no more than 2 to 3 changes in duties per work shift; Plaintiff could perform work involving no more than superficial interaction with coworkers and supervisors; and Plaintiff could only perform work that involved no direct interaction with the general public. Finally, the ALJ found that Plaintiff could not perform her past relevant work; that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy which Plaintiff could perform; and that, therefore, Plaintiff was not disabled. (Tr. 83-93).

Plaintiff contends that the ALJ's decision is not based on substantial evidence because, when determining Plaintiff's RFC, the ALJ gave improper weight to the opinion of Jonathon Rosenboom, Psy. D., a consultative examiner, and did not provide adequate limitation in regard to Plaintiff's ability to deal with work stressors. For the following reasons, the court finds that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

A.     **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues, including

Plaintiff's RFC. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe, 226 F.3d at 972. See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." Gregg v. Barnhart, 354 F.3d 710,

714 (8th Cir. 2003).  See also Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006).  For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered that Plaintiff's alleged psychological symptoms were not consistent with the observations and conclusions of the mental health professionals who examined and treated Plaintiff.  (Tr. 26).  In this regard, Plaintiff presented to Naveed Mirza, M.D., at the Kneibert Clinic, on March 2, 2009, for a psychological evaluation.  Dr. Mirza reported that Plaintiff complained of a "lot of emotional problems."  Dr. Mirza reported that Plaintiff said that her depressed mood was "moderate"; that she had "mild" decreased energy, thought disruption, and oppositionalism; and that she did not have obsessions, compulsions, hyperactivity, delusions, paranoia, panic attacks, or impulsiveness; that Plaintiff had "moderate" somatic complaints and anxiety.  Pursuant to a mental status examination, Dr. Mirza reported that Plaintiff was alert and cooperative; that she was sad and anxious; that her speech was within normal limits; that her mood was depressed and anxious; that the quality of her thought was productive; that her insight was poor; and that her judgment was fair.  Dr. Mirza diagnosed Plaintiff with PTSD, bipolar disorder, and anxiety.  (Tr. 391-97).  Plaintiff received treatment from Dr. Mirza and a social worker at the Kneibert Clinic for her mental health conditions through 2013.  Dr. Mirza generally reported that Plaintiff had a sad or anxious affect; that Plaintiff made good eye contact; that Plaintiff had thoughts of low self-esteem; that she was oriented; that her appearance was appropriate; that she was cooperative; that her psychomotor level was normal; that her affect was sad; that Plaintiff's speech was within normal limits; that the quality of her thought was productive or concrete; that her insight was fair or poor; and that

her judgment was fair.  On occasion, Dr. Mirza did report that Plaintiff's speech was excessive; that the quality of her thought was "[d]istractible."  (Tr. 362, 366, 371, 378, 385, 804, 821-22, 833-34, 842, 858, 865).

Further, when Plaintiff presented to Dr. Rosenboom for a consultative examination, Dr. Rosenboom reported that his clinical observations were that Plaintiff's mood was mildly dysphoric; that Plaintiff made "adequate and appropriate eye contact" and displayed a sad facial expression; that her mental disorder symptoms "did not rise to the level of being acute"; that her personal hygiene was "somewhat below average"; that her gross motor behavior was unremarkable for psychomotor retardation, hyperactivity, tremors, motor tics, or a gait disturbance; that, other than Plaintiff's speech having a "whiny and high pitched quality," it was otherwise "of adequate rate, volume, and productivity"; that she was an articulate speaker; that Plaintiff's "thoughts flowed evenly, logically, and in a goal-directed manner, not showing any formal thought disorder"; that she was cooperative; that she was awake, alert, and attentive; and that she was a good historian, but "her mental disorder symptoms appeared exaggerated in intensity and scope."  (Tr. 470-71).  Based on his interview with Plaintiff and objective test results, discussed below, Dr. Rosenboom concluded that Plaintiff's ability to understand, remember, and carry out complex instructions was "slightly impaired by her hypothesized intellectual deficiency"; that Plaintiff's ability to respond appropriately to work supervisors, co-workers, and work-stressors was moderately impaired by her PTSD and major affective disorder. (Tr. 471-72).

Second, the ALJ considered that Dr. Mirza treated Plaintiff with a combination of medications, but that she was not prescribed any strong psychotropic medications.  (Tr. 26).  The ALJ also considered that Dr. Mirza, Plaintiff's treating doctor, did not recommend that Plaintiff

be hospitalized; that Dr. Mirza frequently expressed optimism that increased medication would control Plaintiff's symptoms; that there was evidence that, when Plaintiff took her medication as prescribed, she experienced some symptom improvement; and that the record did not indicate that Plaintiff had taken medication long enough without interruption to conclude that medication was ineffective in controlling her symptoms. The ALJ also considered that Plaintiff went through periods when she did not take medication due to pregnancy or a lack of Medicaid. (Tr. 26, 803, 838, 840, 857). Further, Dr. Rosenboom also noted that Plaintiff had no history of inpatient psychiatric treatment and that she never sought emergency mental health treatment. (Tr. 469). Such conservative treatment and a lack of hospitalization for mental health problems are consistent with discrediting a claimant's allegation of disabling mental health impairments. See Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.2006) (upholding an ALJ's determination a claimant lacked credibility due in part to "absence of hospitalizations ... limited treatment of symptoms, [and] failure to diligently seek medical care"); Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir.2001) (finding that conservative treatment reduced the claimant's credibility).

Third, the ALJ considered that the reports of medical sources who examined or treated Plaintiff for conditions other than her alleged mental limitations failed to support Plaintiff's claims regarding the severity of her alleged mental impairments. See SSR 06-7p(4), 1996 WL 374186, at *1-2. The ALJ found it significant that Plaintiff had the ability to interact with medical professionals who treated her for issues not related to her alleged mental limitations. (Tr. 26-28). Notably, when Plaintiff presented due to cough, congestion, and vomiting, on December 1, 2009, Navid Siddiqui, M.D., did not report any psychological symptoms. (Tr. 428). On June 11, 2010, when Carrie Carda, M.D. saw Plaintiff because Plaintiff wanted to become pregnant, Dr. Carda did not note any mental health problems. (Tr. 584). In January 2011, when

Plaintiff was seen for back pain related to childbearing, it was reported that Plaintiff was negative for agitation, anger, and anxiousness, and that she was alert and oriented to person, place, and time with normal affect. (Tr. 598-99). In April 2011, when Plaintiff was seen for abdominal pain, Plaintiff's speech, mentation, and affect were appropriate. (Tr. 596). Shaun Ross, M.D., reported, in June 2011, that Plaintiff's judgment and insight were intact; that she was oriented to time, place, and person; her memory was intact for recent and remote events; and Plaintiff had no depression, anxiety, or agitation. (Tr. 504). When Plaintiff was seen for nausea, in September 2011, Michael Barnum, M.D. reported that a psychiatric examination showed that Plaintiff was alert and oriented to person, place, and time with normal affect. (Tr. 587-89). When Plaintiff presented in December 2012, after a fall, Plaintiff's orientation, "mentation," and memory, were normal. (Tr. 687). In February 2013, when Plaintiff presented with cough and congestion, no mental abnormalities were noted. (Tr. 801-802). In May 2013, when Plaintiff presented with back pain, it was noted that Plaintiff was alert and oriented and that her behavior, mood, and affect were within normal limits. (Tr. 668).

Fourth, the ALJ found that Plaintiff's reported daily activities were inconsistent with her allegations of disabling symptoms. (Tr. 28-29). As considered by the ALJ, Plaintiff cared for her young child, accessed community services, attended frequent medical appointments, maintained an on-and-off relationship with her boyfriend, interacted regularly with her cousin, spoke to her mother on a daily basis, and maintained her personal hygiene within acceptable limits. (Tr. 42-43, 59-60, 873). Plaintiff also stated in a Function Report – Adult that she prepared food, dusted and vacuumed, and shopped in stores for food and cleaning supplies; that she could pay bills, handle a savings account, count change, and use a check book; that she watched television and read on a daily basis and did these things "very well"; that she spent time

with others on a daily basis, either talking on the telephone or sitting at her house; and that she did not have trouble talking, hearing, seeing, completing tasks, concentrating, understanding, following instructions, using her hands and getting along with others.  (Tr. 248-53).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, a claimant's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints.  See Wright v. Colvin, 789 F.3d 847, 854 (8th Cir. 2015) ("Wright himself admits to engaging in daily activities that this court has previously found inconsistent with disabling pain, such as driving, shopping, bathing, and cooking."); McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (ALJ properly discounted plaintiff's credibility where, among other factors, plaintiff "was not unduly restricted in his daily activities, which included the ability to perform some cooking, tak[ing] care of his dogs, us[ing] a computer, driv[ing] with a neck brace, and shop[ping] for groceries with the use of an electric cart"); Buckner v. Astrue, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where plaintiff engaged in a daily activities that were inconsistent with his allegations).  See also Ponders v. Colvin, 770 F.3d 1190 (8th Cir. 2014) (holding that substantial evidence supported the ALJ's denial of disability benefits in part because claimant "performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family"); Roberson v. Astrue, 481 F.3d, 1020, 1025 (8th Cir. 2007) (holding that the ALJ's denial of benefits was supported based in part because Plaintiff fixed meals, did housework, shopped for grocers, and visited friends).  Moreover, to the extent Plaintiff urges the court to reweigh the evidence regarding Plaintiff's daily activities and draw its own conclusion in this

regard, it is not the function of the court to do so.  See Bates v. Chater, 54 F.3d 529, 531-32 (8th Cir. 1995) ("As we have stated many times, we do not reweigh the evidence presented to the ALJ, and it is the statutory duty of the ALJ, in the first instance, to assess the credibility of the claimant and other witnesses.") (internal citations, punctuation, and quotations omitted).  In any case, Plaintiff's daily activities were only one of many factors considered by the ALJ when determining Plaintiff's credibility.

Fifth, the court notes that, in June 2009, Plaintiff reported depression due to her daughter's being placed in foster case.  (Tr. 309).  During counseling, in June 2011, Plaintiff stated that she had "some arguments," relating to her fiancé, and that "this stress[ed] her."  (Tr. 864).  As considered by the ALJ, when Plaintiff was admitted to the hospital, on July 23, 2010, with a miscarriage, it was noted that she was tearful and nervous, and had inappropriate behavior and coping.  The ALJ noted that "mental status abnormalities would be expected after going through a miscarriage, and that Plaintiff improved and was released the same day."  (Tr. 26-27, 602-603).  In June 2013, Plaintiff "spoke of stressors related to raising a 14 month old daughter, and financial stressors related to car troubles and a gas bill."  (Tr. 873).  See Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001) (holding that depression was situational and not disabling because it was due to denial of food stamps and workers compensation and because there was no evidence that it resulted in significant functional limitations); Shipley v. Astrue, 2010 WL 1687077, at *12 (E.D. Mo. April 26, 2010) (situational depression is not disabling).

Sixth, the ALJ considered the results of an objective test administered by Dr. Rosenboom.  (Tr. 26).  See Social Security Ruling (SSR) 06-7p(4), 1996 WL 374186, at *1 (July 2, 1996) ("In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence," although disability

determination "cannot be made solely on the basis of objective medical evidence."). Indeed, Dr. Rosenboom reported that he administered the Derogatis Brief Symptom Inventory that asked Plaintiff to "rate the intensity over the last 7 days of 53 mental disorder symptoms. [Plaintiff] indicated that she had problems with 52 of the 53 symptoms over the last seven days." Dr. Rosenboom reported that this was "an unusually high number of positive symptoms suggesting that [Plaintiff] did not differentiate well amongst her mental disorder symptoms." (Tr. 471). See Halverson, 600 F.3d at 933 (doctor's observations were inconsistent with claimant's allegations of disability). Certainly, when an examining physician expresses doubts about the validity of a claimant's complaints, this is a factor which discounts the claimant's credibility. See Baker, 457 F.3d at 892-93 (holding that the ALJ properly discounted the claimant's complaints of pain upon considering reports that the claimant exaggerated his symptoms during an examination) (citing Clay v. Barnhart, 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (noting that two psychologists' findings that the claimant was "malingering" on her IQ tests cast suspicion on the claimant's motivations and credibility); Jones v.Callahan, 122 F.3d 1148, 1151-52 (8th Cir. 1997) (holding that a physician's observation "of the discrepancies in [the claimant's] appearance in the examining room and those outside when he did not know that he was observed" supported an ALJ's finding that the claimant's complaints were not fully credible).

Seventh, as considered by the ALJ, Plaintiff generally reported that medication did not help her symptoms, and Plaintiff's symptoms generally remained the same whether or not she was taking medication (Tr. 26). However, on occasion Plaintiff did report that medicine "helped her somewhat." (Tr. 821). Also, as considered by the ALJ, Plaintiff was prescribed Celexa, on June 5, 2009, when Plaintiff claimed depression. (Tr. 309). Two weeks later, on June 19, 2009, Plaintiff reported that her mood had "leveled off lately." (Tr. 377). Conditions which can be

controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Eighth, the ALJ considered that Plaintiff's credibility was neither diminished nor enhanced by her work history. (Tr. 28). Nonetheless, the court notes that Plaintiff reported on her application for benefits that she stopped working because she could not stand long enough to work, and she told Dr. Rosenboom that she stopped working because of her knees. (Tr. 28, 238, 470). Plaintiff, however, did not report in her application or tell Dr. Rosenboom that she stopped work due to a mental impairment.

Accordingly, the Court finds that the ALJ's credibility determination was properly based on the entire record and is supported by substantial evidence.

## B.     Dr. Rosenboom's Opinion and Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite his or her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney, 228 F.3d at 863). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

As set forth above, the ALJ found that Plaintiff had the RFC for light work with the following limitations: Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; Plaintiff could stand and walk for 4 hours in an 8-hour workday; Plaintiff could sit for 6 hours in an 8-hour workday; Plaintiff could occasionally balance, kneel, crouch, crawl, stoop, and climb ramps or stairs; Plaintiff had to be able to alternate between sitting and standing for 1 to 2 minutes each hour, but did not need to leave the work station to do so; Plaintiff could frequently handle and finger; Plaintiff could not have concentrated exposure to pulmonary irritants; Plaintiff could perform simple, routine tasks that could be performed independently and in a non-public setting; Plaintiff could perform work involving no more than 2 to 3 changes in duties per work shift; Plaintiff could perform work involving no more than superficial interaction with coworkers and supervisors; and Plaintiff could only perform work that involved no direct interaction with the general public.

As stated above, after conducting a mental status examination of Plaintiff and administering an objective test, Dr. Rosenboom opined that Plaintiff's ability to understand, remember, and carry out complex instructions was "slightly impaired by her hypothesized intellectual deficiency," and that Plaintiff's ability to respond appropriately to work supervisors, co-workers, and work-stressors was moderately impaired by her PTSD and major affective disorder. (Tr. 471-72). When determining Plaintiff's RFC, the ALJ stated that he gave "significant weight" to Dr. Rosenboom's opinion because Dr. Rosenboom was "an examining mental health professional." (Tr. 27). Plaintiff argues that the ALJ gave improper weight to Dr. Rosenboom's opinion when determining her RFC. Based on the following, the court finds that

the ALJ gave proper weight to Dr. Rosenboom's opinion when determining Plaintiff's RFC, and that Plaintiff's arguments to the contrary are without merit.[1]

First, to the extent Plaintiff argues that, despite the ALJ's affording significant weight to Dr. Rosenboom's opinion, the ALJ failed to incorporate Dr. Rosenboom's opinion in its entirety by not including a limitation regarding Plaintiff's ability to respond to work stressors (Doc. 12 at 7-12), the ALJ did not state that he was giving Dr. Rosenboom's opinion *controlling weight*. Rather the ALJ stated that he was giving Dr. Rosenboom's opinion "significant weight." (Tr. 27). Moreover, upon addressing Dr. Rosenboom's report, the ALJ did expressly acknowledge that Dr. Rosenboom "opined that [Plaintiff's] ability to respond appropriate to work supervisors, coworkers, *and work stressors* was moderately limited." (Tr. 21) (emphasis added). In any case, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). Rather, the ALJ is required to consider the record as a whole, including the records and opinions of treating, examining, and consulting physicians. Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians.") (internal quotation marks omitted).

Indeed, when formulating Plaintiff's RFC, the ALJ accommodated Dr. Rosenboom's opinion to the extent Dr. Rosenboom opined that Plaintiff was limited in her ability to respond to work stressors in that the ALJ limited Plaintiff to jobs which required no more than two to three changes in duties a week, to only superficial interaction with coworkers and supervisors, and to

---

[1] Plaintiff does not challenge the ALJ's evaluation of her physical impairments and resulting limitations. Rather, as discussed above, Plaintiff' challenges only the weight which the ALJ gave to Dr. Rosenboom's opinion when formulating Plaintiff's mental RFC. (Doc. 13 at 7-12). As such, the court will address only that aspect of the ALJ's RFC determination which addresses Plaintiff's mental limitations.

no direct interaction with the public.  See SSR 85-15, 1985 WL 56857, at *6 (Jan. 1, 1985) (recognizing that the stress level for persons with mental disorders is "highly individualized").

Second, as discussed above in regard to Plaintiff's credibility, Plaintiff's medical records include support for Dr. Rosenboom's opinion, and doctors who saw Plaintiff for physical conditions during the relevant period did not note that Plaintiff had significant mental health abnormalities.  See Lauer, 245 F.3d at 703 ("'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)").

Third, to the extent the ALJ did not include the term "work stressors" in Plaintiff's RFC despite stating that he was giving substantial weight to Dr. Rosenboom's opinion, an ALJ is not required to refute every possible limitation suggested by the record or by any particular medical source.  See McCoy v. Astrue, 648 F3d 605, 615 (8th Cir. 2011) ("We review the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but we do not require an ALJ to mechanically list and reject every possible limitation.").

Fourth, Dr. Rosenboom based his opinion on Plaintiff endorsing an unusually high number of mental health related symptoms pursuant to an objective test administered by Dr. Rosenboom.  Dr. Rosenboom noted that Plaintiff's endorsed 52 out of 53 mental health symptoms which, he notes, despite Plaintiff being a good historian, "her mental health disorder symptoms appeared exaggerated in intensity and scope."  (Tr. 471).

Fifth, Dr. Rosenboom based his opinion on his clinical observations which demonstrated, among other things, that Plaintiff was alert and attentive; that Plaintiff's "spontaneously produced thoughts [were] not notable for psychotic symptoms"; and that Plaintiff's "thoughts

flowed evenly, logically, and in a goal-directed manner, not showing signs of a formal thought disorder."  (Tr. 470-71).

Sixth, Dr. Rosenboom examined Plaintiff, and made these clinical observations, when Plaintiff "was not prescribed or taking any psychoactive medications."  (Tr. 27, 468).

Fifth, because Dr. Rosenboom examined Plaintiff, his opinion was entitled to more weight than Joan Singer, Ph.D., a State agency psychologist, who did not examine Plaintiff.  (Tr. 27).  See, e.g., Toland v. Colvin, 761 F.3d 931, 937 (8th Cir. 2014) (ALJ properly accorded considerable weight to consultative examiner's opinion in finding claimant not disabled); Hepp v. Astrue, 511 F.3d 798, 806-07 (8th Cir. 2008) (consultative examiners' reports supported ALJ's finding that claimant was not disabled).  Nonetheless, the ALJ did consider, pursuant to his overall review of the record, Dr. Singer's opinion that Plaintiff could perform simple, repetitive tasks away from the public in a low stress environment.  See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); Kamann, 721 F3d at 951 (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments); Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) (finding ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole).

Seventh, as considered by the ALJ, Dr. Rosenboom is a mental health specialist who examined Plaintiff, and, therefore, his opinion was entitled to be given significant weight.  See Brown, 611 F.3d at 953; Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than the opinion of a source who is not a specialist.").

Eighth, upon determining Plaintiff's RFC and determining the weight to be given the various opinions of record, the ALJ considered that Dr. Mirza did not provide an opinion of Plaintiff's limitations, and that, to the extent Dr. Mirza's notes constituted an opinion, the ALJ gave Dr. Mirza's opinion little weight because it was "based explicitly on [Plaintiff's] [] subjective complaints." (Tr. 27). Indeed, the record does not reflect that Dr. Mirza administered any tests to Plaintiff to verify the extent of her alleged symptoms as did Dr. Rosenboom.

Ninth, when determining the weight to be given opinions of record and Plaintiff's RFC, the ALJ considered that Jeffrey Till, a licensed social worker, reported, on October 1, 2009, that Plaintiff "seem[ed] to be doing okay for the most part with her mental status other than some difficulties which seem related to PTSD and these will be worked on in future sessions." (Tr. 386). The ALJ noted that although Mr. Till was not an acceptable medical source, his opinion could be considered. Thus, the ALJ found that Mr. Till saw Plaintiff periodically and spoke with her about her impairments in depth, and concluded that his opinion that Plaintiff was "doing well despite having had her second child taken into DFS custody" should be given "some weight because it reflect[ed] a treating sources opinion that [Plaintiff's] impairments were at least somewhat controllable by medication and behavior modification." (Tr. 27).

Tenth, to the extent Plaintiff argues that the ALJ's decision is inconsistent with Reynolds v. Astrue, 2007 WL 5100461 (E.D. Mo. Aug. 7, 2007) (Doc. 12 at 10-12). Reynolds, 2007 WL 5100461, at *3, is distinguishable from the matter under consideration. In Reynolds, there was "no indication that the ALJ even considered" the opinion of the claimant's treating doctor, whereas the ALJ in Plaintiff's case considered Dr. Mirza's records and those of all other medical sources of record in great detail when determining the weight to be given Dr. Rosenboom's opinion when formulating Plaintiff's RFC. Also, the ALJ in Reynolds, 2007 WL 5100461, at *3,

gave "great weight" to the opinion of a non-examining consulting physician, despite there being "no medical evidence on the record" to support the physician's opinion. Here, the ALJ found that Dr. Rosenboom's opinion, as well as that of Mr. Till, was consistent with other evidence of record.

In conclusion, the court finds that, upon determining Plaintiff's RFC, as required by the Regulations and case law, the ALJ first identified Plaintiff's functional limitations and restrictions based on the record as a whole, including the medical evidence, and then assessed her work-related abilities on a function-by-function basis. See Harris, 356 F.3d at 929. Additionally, the ALJ assessed Plaintiff's credibility, as discussed above, and only included her credible limitations. See Tindell v. Barnhart, 444 F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").

Although the ALJ determined that Plaintiff could perform light work, the ALJ further considered whether she could perform the full range of work at that exertional level. As such, when formulating Plaintiff's RFC, the ALJ determined that Plaintiff's ability to perform all or substantially all of the requirements of light work was impeded with additional limitations. (Tr. 30). See Goff, 421 F.3d at 790. When determining Plaintiff's RFC, the ALJ moved, analytically, from ascertaining the true extent of Plaintiff's impairments to determining the kind of work she could still perform despite her impairments. Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995). As such, the court finds that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law.

After determining Plaintiff's RFC, the ALJ considered the testimony of a VE that there were jobs, existing in significant numbers in the national economy, which a person of Plaintiff's

age and with her RFC, education, and work experience could perform. The ALJ then determined that the VE's testimony was consistent with the Dictionary of Occupational Titles. Cf. Kemp v. Colvin, 765 F.3d 926, 930 (8th Cir. 2014) (remanding denial of benefits because "the record does not reflect whether the VE or the ALJ even recognized the possible conflict between the hypothetical" and the recommended job). The ALJ, therefore, found Plaintiff not disabled. As such, the court finds that the ALJ's ultimate determination that Plaintiff was not disabled is based on substantial evidence and consistent with the Regulations and case law.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint is **DENIED**; Docs. 1, 12.

Dated this 29th day of September, 2016.


\_\_\_\_/s/ Noelle C. Collins_____
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE